*Margin:* Eastern Dist. *June,* 1840.

CARTER *vs.* CALDWELL.

---

CARTER *vs.* CALDWELL.

APPEAL FROM THE COMMERCIAL COURT OF NEW-ORLEANS.

In the executory proceedings on an act of sale, containing the pact *de non alienando*, against mortgaged property in the hands of the last vendee, in which *no notice* is required, the latter is not bound to call his vendor in warranty.

The intermediate vendors sell with a knowledge of the first vendor's rights to go against the property, and the consequent danger of eviction of their vendees, against which they have guaranteed.

The intermediate vendor's obligation is to do, without notice, that which he would be bound to do if called in warranty, which is to pay the debt to the original vendor, or see it paid.

So, the last vendee, when evicted, has a right to recover from his vendor the amount he has paid, who has the same rights against his vendor.

This is an action to recover from the defendant the amount of three promissory notes, of six hundred and twenty-five dollars each, given for part of the profits of a speculation in a town lot.

The history of the case is briefly this: On the 4th May, 1836, John Slidell sold to Richard Hagan a lot of ground far back on Canal-street, for seven thousand five hundred dollars, on long credits, with special mortgage reserved, and inserting, in the act of sale, the pact *de non alienando*. On the 20th December, Hagan sells to John Caldwell, the present defendant, the same property for twelve thousand five hundred dollars, for which the latter gave his notes; relying on Hagan's paying his own notes to Slidell and releasing the mortgage. In January, 1837, Caldwell sold to R. M. Carter, for fifteen thousand dollars, who assumed to pay the notes of his vendor to Hagan, and gave his four notes, of six hundred and twenty-five dollars each, payable at different periods, for the profits of the speculation. In this sale, Caldwell guaranteed against all incumbrances, and Hagan intervened, binding himself to raise Slidell's mortgage whenever thereto required. On the 27th February, 1837, Carter sells to Thomas Duplessis, for fifteen thousand seven hundred and fifty dollars, being seven hundred and fifty dollars profit on the last sale, which was paid in cash.

Soon after the last of these sales, Slidell obtained an order of seizure and sale for the price due by Hagan, on his mortgage against the property in the hands of Duplessis, without any notice. The property was sold, under Slidell's mortgage, for six thousand eight hundred dollars. Duplessis, being evicted, came upon Carter for his seven hundred and fifty dollars which he had paid, and Carter now sues Caldwell for the amount of three of his notes for six hundred and

twenty-five dollars each, which he had paid to a third person as the holder.

The defendant, Caldwell, resisted the action, because Duplessis, who was evicted, had not called his vendor in warranty in the suit of eviction, in which case he might have made a valid defence.

Of this opinion was the judge presiding, and there was judgment for the defendant. The plaintiff appealed.

*Benjamin,* for the appellant.

*Macready,* contra.

*Morphy, J.,* delivered the opinion of the court.

The following are the circumstances out of which arose the controversy now submitted for our decision. On the 4th of May, 1836, J. Slidell sold to Richard Hagan a lot of ground on Canal-street, for seven thousand five hundred dollars, which he received in three promissory notes of two thousand five hundred dollars each, secured by special mortgage on the premises sold; on the 20th December, 1836, Hagan sold the property to Caldwell for twelve thousand five hundred dollars; the purchaser gave his notes for the full price, and relied on his vendor's engagement to pay off the mortgage standing in favor of Slidell; on the 14th February, 1837, Caldwell sold to Carter for fifteen thousand dollars: the latter assumed to pay Caldwell's notes to Hagan for twelve thousand five hundred dollars, and subscribed to him four notes of six hundred and twenty-five dollars each, for the balance. Caldwell gave a full guarantee against all incumbrances, and Hagan intervened in the act of sale binding himself to have the mortgage to Slidell raised, whenever Carter may dispose of the property, and the purchaser thereof shall require the same to be raised before accepting the sale, or at any time when Carter himself may require such mortgage to be raised. On the 27th of February, 1837, Carter sold to T. Duplessis, for fifteen thousand seven hundred and fifty dollars, the latter paying in cash seven hundred and fifty dollars, and assuming to pay Carter's notes to Caldwell for two thousand five hun-

EASTERN DIST. dred dollars, and the notes of the latter to Hagan for twelve
June, 1840.    thousand five hundred dollars, which Carter had under-
                taken to pay in his discharge. On the 26th of May, 1838,
CARTER          Slidell sued out a writ of seizure and sale on one of Hagan's
vs.             notes for the price ; the property brought at the sheriff's sale
CALDWELL.       six thousand eight hundred dollars.

This suit is brought to recover back from defendant the
amount of three of the negotiable notes of six hundred and
twenty-five dollars each, which plaintiff had given him, on
the ground that plaintiff's vendee, having been evicted by
reason of an incumbrance guaranteed against by defendant,
had in consequence thereof refused to pay said notes, and
that plaintiff had been compelled to pay them to third holders.
The judge of the court below was of opinion that the plain-
tiff had no right to recover, and gave judgment for the
defendant ; the plaintiff appealed.

The opinion of the judge à quo is predicated mainly on the
ground that Caldwell was not notified of the proceedings
against Carter's vendee, which resulted in his eviction ; that
had he been called in warranty, he could have prevented the
eviction by paying off the mortgage to Slidell. We are of
opinion that the proceedings by which the plaintiff's vendee
was evicted, did not constitute a suit against Duplessis,
wherein he was bound to call his vendor in warranty ; but
it was an *executory process* against Hagan, the original mort-
gagor, wherein no notice is required by law to any subsequent
party. The mortgage held by Slidell was one containing
the pact *de non alienando* ; he seized the property as if yet in
the hands of his purchaser, Hagan. It is well settled, that
the mortgagee is, by virtue of such *pact*, entitled to seize the
property, as though no alienation had taken place, *i. e.*
against the original mortgagor without any notice to the
third possessor. Caldwell must have known the nature of
the incumbrance against which he guaranteed the plaintiff,
viz. : a mortgage by which the plaintiff and his assigns were
exposed to be evicted without any notice being required by
law to be given to them or to himself. This danger he knew
to exist ; against it he guaranteed, and cannot now complain

*In the execu-
tory proceedings
on an act of sale,
containing the
pact de non alien-
ando, against
mortgaged pro-
perty in the
hands of the last
vendee, in which
no notice is re-
quired, he is not
bound to call his
vendor in war-
ranty.
The interme-
diate vendors
sell with a
knowledge of
the first vendor's
rights to go
against the pro-
perty, and the
consequent dan-
ger of eviction
of their vendees,
against which
they have guar-
anteed.*

that notice of Slidell's proceedings was not given him, when he knew that he was entitled to none, and when the plaintiff received none himself. Defendant's obligation then was to do, without notice, what he would have been bound to do, if called in warranty, in an hypothecary action brought against his vendee, *i. e.; pay the debt, or see it paid by Hagan;* the property being taken away from the plaintiff's vendee in consequence of defendant's failure to comply with this obligation, the consideration for which the plaintiff gave his notes has failed, and he has a right to recover back of defendant any portion of the price he has paid ; and the defendant has the same rights against his vendor, R. Hagan.

It has been contended that Hagan's direct engagement to the plaintiff, to raise this mortgage when required by him to do so, had done away with the defendant's guarantee, or, at least, had imposed on the plaintiff the obligation of calling on Hagan to pay off this mortgage, which plaintiff had failed to do. The object for which Hagan consented to enter into this agreement, is too obvious for us to admit of any such construction. The outstanding notes of Hagan secured by the mortgage, had a long time to run, and might have prevented the resale of the property. To obviate this difficulty, and for this sole purpose, we apprehend, Hagan bound himself to raise the mortgage, if required to do so by the plaintiff or his vendee ; and in like manner, we find him appearing in the sale of Carter to Duplessis, and contracting the same obligation. Duplessis having been satisfied with this renewed engagement on the part of Hagan, and consenting to take the property with the incumbrance, the plaintiff had no occasion to call in Hagan to raise the mortgage, before the maturity of his notes; when they became due, it was not his business, but that of the holder, to call on the maker for payment. If he knew of their dishonor, which is not in evidence, he might have remained quiet, relying on the defendant's guarantee to him, which he had no reason to consider as impaired or weakened by the facility which Hagan consented to give him, in case he resold the property.

EASTERN DIST.
*June,* 1840.

CARTER
*vs.*
CALDWELL.

The intermediate vendor's obligation is to do, without notice, that which he would be bound to do if called in warranty, which is to pay the debt of the original vendor, or see it paid.

So, the last vendee, when evicted, has a right to recover from his vendor the amount he has paid, who has the same rights against his vendor.

EASTERN DIST.     It is, therefore, ordered, adjudged and decreed, that the
*June*, 1840.   judgment of the Commercial Court be avoided and re-
FREEMAN, F.M.C  versed; and, proceeding to give such judgment as, in our
*vs.*   opinion, should have been rendered below, it is ordered,
WATTS, SHERIFF,
ETC.    adjudged and decreed, that plaintiff do recover of defendant,
the amount of the three notes mentioned in the petition, to
wit: eighteen hundred and seventy-five dollars, with legal
interest from the respective periods of maturity of said notes,
together with costs in both courts.